STATE OF HAWAII, Plaintiff-Appellee,
v.
CARL EDWARD LEDUNE, aka EDDIE FALCON, Defendant-Appellant.
No. 29248.
Intermediate Court of Appeals of Hawaii.
November 17, 2009.
On the briefs:
Gregory T. Grab, for Defendant-Appellant.
Linda L. Walton, Deputy Prosecuting Attorney, County of Hawai`i, for Plaintiff-Appellant.

SUMMARY DISPOSITION ORDER
NAKAMURA, C.J., WATANABE, and FUJISE, JJ.
Defendant-Appellant Carl Edward Ledune, also known as Eddie Falcon (Ledune), appeals from the judgment entered by the Family Court of the Third Circuit (family court)[1] on October 6, 2006, convicting and sentencing him, pursuant to a jury verdict, for the misdemeanor offenses of (1) unlawful imprisonment in the second degree in violation of Hawaii Revised Statutes (HRS) § 707-722(1) (1993), and (2) abuse of family or household member in violation of HRS § 709-906(1) (Supp. 2005).
Ledune contends that the family court erred in denying his October 16, 2006 Motion to Dismiss, or in the Alternative, Motion for New Trial, or in the Alternative, Motion for Judgment of Acquittal (Motion to Dismiss), which was based on the failure of Plaintiff-Appellee State of Hawai`i (State) to disclose certain police reports to him prior to trial.]
We disagree and affirm.

A.
The charges against Ledune stemmed from an incident that occurred on July 9, 2005 (July 9, 2005 incident), following an argument between Ledune and his live-in girlfriend, April, as they were headed home in April's Ford Bronco (Bronco). April testified at trial that while she was driving, Ledune got angry that she wanted to go to a card game, started yelling at her, grabbed her throat, and told her to "keep driving, or we'll go into oncoming traffic." She therefore continued on, but after reaching McCoy Plantation Road, she stopped and exited the Bronco. Ledune also exited the Bronco. April and a bystander who witnessed the July 9, 2005 incident testified that Ledune grabbed April, tried to push her back into the car, and kept slamming the door on her. April sustained multiple bruises as a result. Officer Daryl Clinton took April's statement and generated a police report numbered CO5022776/KN (Police Report 1) for the offenses of abuse of family or household member and unlawful imprisonment in the second degree.
On July 17, 2005, Ledune was arrested as a result of the July 9, 2005 incident. He was arraigned on July 18, 2005 and subsequently posted bail.
On July 21, 2005, Ledune walked into the Captain Cook police substation and reported to Officer Zachary Fernando (Officer Fernando) that (1) April had assaulted Ledune on June 30, 2005; (2) April had poked Ledune in his left eye on July 9, 2005; (3) four unknown males had assaulted Ledune with bats on July 7, 2005 (bat incident); and (4) April had sent Ledune numerous lewd and graphic cell-phone picture messages. Ledune did not mention that he had been arrested and arraigned following the July 9, 2005 incident involving April.
Based on Ledune's complaint, Officer Fernando prepared four police reports: CO5024170/KN, for assault in the third degree (Police Report 2); CO5024171/KN, for assault (Police Report 3); DCO5024158/KN, for assault (Police Report 4); and CO50241741KN, for harassment (Police Report 5) (collectively, Fernando reports). Officer Fernando then initiated an all-points bulletin for April's arrest. Officer Fernando failed to check the Hawai`i County Police Department's records management system and did not make the connection between April's complaint against Ledune, which was the basis for Police Report 1, and Ledune's complaints against April, which were the subject of the Fernando reports. On August 15, 2005, Officer Fernando suspended his investigation of Ledune's complaint against April, pending contact with her.
Prior to trial in this case, Ledune filed a written request for disclosure pursuant to Hawai`i Rules of Penal Procedure (HRPP) Rule 16(b) (2000), demanding discovery and inspection of broad categories of documents. Ledune did not request any specific documents, such as the Fernando reports, and the State did not turn over the Fernando reports pursuant to Ledune's discovery request.
Also prior to trial, the deputy prosecuting attorney (DPA), on her initiative, requested an investigator to obtain all police reports involving April, including Police Reports 2 to 5. Through a routing snafu, however, the DPA did not receive the police reports prior to trial.
At trial, Ledune's defenses were reasonable doubt, self-defense, and impossibility. Ledune maintained that he was not restraining April during the July 9, 2005 incident, just trying to convince her to go home. Additionally, Ledune asserted that he could not possibly have carried April into the car because he was still suffering from pain due to injuries received two days earlier in the bat incident.
During direct examination, Ledune testified that he had been "batted" by four unknown men two days before the July 9, 2005 incident and had reported the incident to the police. The DPA immediately asked a colleague to inquire whether Ledune had indeed made a complaint to police. Prior to the lunch recess, the DPA received an incident sheet regarding the bat incident. During cross-examination of Ledune, the DPA used information on the incident sheet to impeach Ledune about statements he had made regarding the alleged bat incident. Ledune denied making most of the statements, acknowledged making one, and clarified another. He also admitted that he may have bruised April when he pushed her.
During the lunch recess, the DPA received faxed copies of the Fernando reports that included the police report about the bat incident and left a copy of the reports for Ledune's counsel at the defense table. After lunch, the DPA was allowed to ask Ledune one question regarding the bat incident before being stopped by a defense objection. The DPA sought to call Officer Fernando to testify about his reports, but the family court denied the request because the officer would have taken too long to get to the courthouse and trial would have to be continued.
Ledune's counsel orally moved for acquittal based on the State's failure to disclose the police reports prior to trial. The family court denied the motion but instructed defense counsel to submit a written motion after trial.
Ledune was found guilty as charged and sentenced to one year of incarceration on each charge, to be served consecutively.

B.
On October 16, 2006, Ledune filed his Motion to Dismiss. Ledune argued that the family court erred in allowing the State to cross-examine him regarding his statements that were contained in the Fernando reports because the DPA committed misconduct by failing to timely disclose the reports to Ledune. The State opposed the Motion to Dismiss.
The family court conducted a lengthy hearing over several days on the Motion to Dismiss. Following the hearing, the family court denied the Motion to Dismiss and on December 24, 2007, entered extensive "Findings of Fact [(FsOF)], Conclusions of Law [(CsOL)], and Order Denying [Ledune's] Motion to Dismiss, With Prejudice."

C.
On appeal, Ledune challenges the following of the family court's FsOF:
46. It is not clear from the evidence which Incident Sheets [the DPA] possessed before lunch. The Incident Sheet from [an investigator for the DPA] referred only to the batting incident whereas the Incident Sheet retrieved by [another DPA] included facts regarding the incidents involving [April] including the underlying case. Neither, however, can be fairly regarded to be "Statements" as that term is used in HRPP 16(b) (3) or that they were intended by the State to be used at trial.
Ledune argues that the Incident Sheets are, contrary to the family court's decision, "statements" as that term is used in HRPP Rule 16(b)(3).
On appeal, the determination of whether alleged discovery violations of HRPP Rule 16 warrant vacatur of a conviction is reviewed in two stages. First, it must be determined whether the underlying discovery order was valid. State v. Fukusaku, 85 Hawai`i 462, 477-78, 946 P.2d 32, 47-48 (1997). If there was a valid discovery order, the second step is to evaluate whether the family court abused its discretion in remedying the violation. Id.
The test for determining if a lower court has abused its discretion in handling a Rule 16 problem such as the one at bar is if after finding a violation of the rule, the court takes measures to alleviate any prejudice, such as making a full inquiry into the circumstances, and allowing the other side to interview the unlisted witness before the witness testifies.
State v. Miller, 67 Haw. 121, 122, 680 P.2d 251, 252 (1984).
HRPP Rule 16 (2007), pursuant to which Ledune filed his discovery request, provides, in relevant part, as follows:
DISCOVERY.
(a) Applicability. Subject to subsection (d) of this rule, discovery under this rule may be obtained in and is limited to cases in which the defendant is charged with a felony, and may commence upon the filing in circuit court of an indictment, an information, or a complaint.
(b) Disclosure by the prosecution.
(1) DISCLOSURE OF MATTERS WITHIN PROSECUTION'S POSSESSION. The prosecutor shall disclose to the defendant or the defendant's attorney the following material and information within the prosecutor's possession or control:
(i) the names and last known addresses of persons whom the prosecutor intends to call as witnesses in the presentation of the evidence in chief, together with any relevant written or recorded statements, provided that statements recorded by the prosecutor shall not be subject to disclosure;
(ii) any written or recorded statements and the substance of any oral statements made by the defendant, or made by a co-defendant if intended to be used in a joint trial, together with the names and last known addresses of persons who witnessed the making of such statements;
(iii) any reports or statements of experts, which were made in connection with the particular case or which the prosecutor intends to introduce, or which are material to the preparation of the defense and are specifically designated in writing by defense counsel, including results of physical or mental examinations and of scientific tests, experiments, or comparisons;
(iv) any books, papers, documents, photographs, or tangible objects which the prosecutor intends to introduce, or which were obtained from or which belong to the defendant, or which are material to the preparation of the defense and are specifically designated in writing by defense counsel;
(v) a copy of any Hawai`i criminal record of the defendant and, if so ordered by the court, a copy of any criminal record of the defendant outside the State of Hawai`i [sic];
(vi) whether there has been any electronic surveillance (including wiretapping) of conversations to which the defendant was a party or occurring on the defendant's premises; and
(vii) any material or information which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the defendant's punishment therefor.
(2) DISCLOSURE OF MATTERS NOT WITHIN PROSECUTION'S POSSESSION. Upon written request of defense counsel and specific designation by defense counsel of material or information which would be discoverable if in the possession or control of the prosecutor and which is in the possession or control of other governmental personnel, the prosecutor shall use diligent good faith efforts to cause such material or information to be made available to defense counsel; and if the prosecutor's efforts are unsuccessful the court shall issue suitable subpoenas or orders to cause such material or information to be made available to defense counsel.
(3) DEFINITION. The term "statement" as used in subsection (b)(1)(i) and (c)(2)(i) of this rule means:
(i) a written statement made by the witness and signed or otherwise adopted or approved by the witness; or
(ii) a stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by the witness and recorded contemporaneously with the making of such oral statement.
(Emphasis added.)
In this case, Ledune was charged with two misdemeanor offenses. Therefore, HRPP Rule 16 did not apply to his discovery request. HRPP Rule 16.1 (2000) governs discovery in non-felony cases. HRPP Rule 16.1(b) explicitly provides:
DISCOVERY PROCEDURES FOR NON-FELONY CRIMINAL AND CRIMINAL TRAFFIC CASES.
. . . .
(b) Request for discovery. If discovery is sought of materials that would be discoverable in felony cases pursuant to these rules, a request for discovery shall be made to the opposing side in writing and shall list the specific materials being sought. Unless otherwise ordered, the request shall not be filed with the court.
(Emphases added.) Ledune never specifically requested discovery of the Fernando reports or the related incident sheets. HRPP Rule 16.1(c) provides for a motion to compel discovery, but Ledune never filed such a motion. Instead, Ledune relied upon a general request for discovery based on HRPP Rule 16. A general request does not satisfy the HRPP Rule 16.1 requirement of a list of specific materials.
Moreover, even if a discovery violation were present in this case, the family court did not abuse its discretion in denying the relief requested by Ledune. The family court's limitation on the State's use of the Fernando reports in cross-examining Ledune and the extensive hearing held to investigate the matter adequately alleviated any potential prejudice to Ledune.

D.
Ledune challenges the following conclusion of law (COL) entered by the family court:
C. Rule 16, Hawaii Rules of Penal Procedure (hereinafter "Rule 16") sets forth the State's general obligations regarding discovery. While Rule 16 obligations are limited to felony cases, the State waived any right to argue that it was under no obligation to disclose documents, because it in every way attempted to comply with [Ledune's] discovery requests. In this case, the State missed the Fernando Reports, [Ledune] exercised his right to remain silent in the instant case, and defense counsel failed to ask for the reports notwithstanding the fact that [Ledune] informed him of the reports. If blame is to be assessed, there is plenty to go around. Neither counsel was ill inspired or willfully concealed information. Fortunately for both counsel, there is no prejudice to [Ledune].
Ledune contends that the family court erred in concluding that the State's use of the incident sheet to attempt to impeach Ledune was "tolerable viewed in the light of the parties['] discovery history." The thrust of the foregoing COL, however, was that Ledune was not prejudiced by the State's failure to disclose the incident sheet to Ledune. The incident sheet did not contain information that was favorable to Ledune but merely summarized information contained in reports that were generated by Officer Fernando pursuant to information provided to Ledune. Based on our review of the record, we agree that Ledune was not prejudiced.

E.
Ledune challenges the following CsOL:
E. [Ledune] has not shown that the omitted evidence adversely affected the jury's ability to reach a just conclusion or that [Ledune] was prejudiced by the late disclosure. [Ledune] knew of the information contained in the reports and both counsel were provided an opportunity to examine [Ledune] on the reports during trial.
. . . .
G. Of equal concern is that defense counsel was provided information by [Ledune] of the subject reports, failed to request them, and then cried foul. But for his candor during the hearing on this motion, the Court would not have learned that [Ledune] had advised counsel of the reports to the police and no action was taken.
H. Rule 16(e)(8), HRPP requires counsel to confer regarding discovery issued [sic]. In this case, there was a breakdown of this obligation. Both counsel bear responsibility.
There is substantial evidence in the record to support the foregoing CsOL. The Hawai`i Supreme Court has recognized that the failure of the State to provide evidence favorable to an accused may constitute a violation of the due-process guarantees of the United States and Hawai`i constitutions "where the evidence is material to guilt or punishment[.]" State v. Okumura, 78 Hawai`i 383, 401, 894 P.2d 80, 98 (1995) (citing State v. Matafeo, 71 Haw. 183, 787 P.2d 671 (1990), which in turn cited Brady v. Maryland, 373 U.S. 83, 87 (1963)).
However, in order to establish a Brady violation, an appellant must make a showing that the suppressed evidence would create a reasonable doubt about the Appellant's guilt that would not otherwise exist.
Okumura, 78 Hawai`i at 402, 894 P.2d at 99 (internal quotation marks and brackets omitted).
Based on our review of the record, we conclude that Ledune has not shown that the undisclosed Fernando reports and incident sheets would have created a reasonable doubt that would not otherwise exist, which was necessary to establish a due-process violation. See Okumura, 78 Hawai`i at 401-02, 894 P.2d at 98-99. Ledune was able to testify about the bat incident with the four men and that he reported the incident to the police. He also presented the testimony of an emergency-room nurse regarding his injuries following the July 9, 2005 incident. The [DPA] was limited to asking if Ledune had made certain statements regarding the bat incident and was never allowed to impeach Ledune with the Fernando reports.

F.
Accordingly, we affirm the judgment of the family court entered on October 6, 2006.
NOTES
[1] The Honorable Elizabeth A. Strance presided over the proceedings before the family court.